May it please the Court, my name is Simone Shaheen. I represent Alfred Darnell, Florida. I wish to reserve two minutes rebuttal. I would like to clarify for the Court this morning a point on both of our double jeopardy arguments and of course to answer the Court's questions. If the Court will allow me, I'll start with a short quotation from Judge Ishii when he ruled on the Defendant's Rule 29 motion. And I'll go beyond what was in my briefs, but all of this is contained in the record beginning at page 92. Quote, in this case, there is no drug activity going on on the premises. It's going to be a single transaction. Mr. Rooney, okay. The Court, but is a single transaction sufficient to trigger this section? Because it would seem to me otherwise. Mr. Rooney went on to try to argue with the Court that a single transaction would be enough. And the Court responded, but if there were other facts indicating something more than the single transaction involved here, then I would have been inclined to deny it, meaning the Rule 29 motion. But I have reviewed the cases. As you said, in reviewing all the cases, both cited by the parties in your proposed jury instructions and the very few that are in the annotations, there really isn't any issue that's here, which is what had to be shown to show distribution. Because I think they were conceded in those cases that there were multiple sales or manufacturing or some ongoing thing, so that wasn't even an issue. I point the Court to this language because as part of my collateral estoppel argument, I am pointing out to the Court that Judge Ishii made a specific finding. He said that in Mr. Ford's case, the purpose element could not be satisfied by the single proposed transaction that was at issue in the trial. And it's the purpose element that was at issue in the trial. Counsel, does that mean we should ignore what A-1 and A-2 say in Section 856? No, Your Honor. I think it's two separate arguments. What A-1 and A-2 say is relevant, but the actual meaning of those two and the way they interrelate is more important for the Blockburger analysis. The collateral estoppel question I'm putting before the Court is simply, did the Court make a finding in the first trial that in a second trial, either the Court or the jury, would have to make a contrary finding about? And this part of the collateral estoppel argument is independent from the Blockburger analysis. I start with this point because if you take the position of the government, which I believe is not the correct position and I'll address subsequently, but if you take the position of the government and you say that purpose element in A-2 belongs to a different person than the purpose element in A-1, if you take that position, collateral estoppel still applies because the Court found that one transaction doesn't establish the purpose. And even if the purpose belongs to two different parties, the language of the purpose requirement is exactly the same. What is your argument on whether this specific issue was actually litigated in the prior case? It's my position that the issue was litigated, and I think the language that I've just cited from the Court helps to demonstrate that. The Court denied the Rule 29 motion, as the Court himself said. He granted, I'm sorry, the Rule 29 motion because there weren't facts that would establish anything more than a single transaction. The Court thought about, and he highlighted in the language that I quoted, what had to be shown to show distribution, meaning for the purpose of distributing.  The Court decided that issue. And it's not critical here that the Court wasn't specifically thinking about A-2 because that's not the query. He didn't have to foresee what may or may not have been required under A-2. What is it that the Court specifically decided? The Court decided that a single transaction was not enough to establish for the purpose of distributing element. Notwithstanding that the Court, when you asked him, and maybe I'm mixing two different questions, but later on you asked him if it was the Court's ruling under 856-A-2 a single transaction would suffice. The Court said no. Yes, Your Honor. I asked the Court, is the Court ruling that under A-2 a single transaction would suffice? The Court responded no. And the Court's point, he went on to explain that that he wasn't, and again, what we're talking about now is a colloquy that took place on the motion to dismiss this charge, not on the ruling of, not on the Rule 29 motion. And the Court is after the fact going back and saying, look, I wasn't taking into consideration specifically A-2 at that time. And my point to this Court is that doesn't matter. That's not the query for collateral estoppel purposes. He didn't have to foresee that this issue may arise under A-2. All that matters is that he made a finding on the charge before him at the time, it was A-1, but that that finding would have to be contradicted in order for the government to convict Mr. Ford of the second trial. But I don't want to stop there because that's only one part of the collateral estoppel argument. The second part, and I think the more well-reasoned one, or perhaps the stronger one, is that Mr. — I'm sorry, Judge Ishii made a finding that he cannot say a reasonable jury could find that Mr. Ford had the requisite intent in this case with respect to this particular facility to be used as a place of distribution. And this ties more into my Blockberger argument, and I'll proceed on to that, because that part of the collateral estoppel argument is related to it. In order for this court to find that in A-2, the purpose, the manager of the property doesn't have to have the purpose in making the property available that it be used for an illicit purpose. To find, in other words, that there is an element in A-1 that's not in A-2 and that A-2 has an element that's not in A-1, the court would have to do four things. It would have to say, one, that the only circuit who looked at this decision, the Tenth Circuit, was wrong. And not only was the — What do we do with Tamez, our own constructor? Your Honor, I don't think Tamez is mutually inconsistent with the position I'm advancing. Tamez was not a double jeopardy case to start out with. Well, it doesn't have to be. I mean, the issue is whether it's construed the statute, which it has, as having two different elements, dealing with two different circumstances. One is direct dealing and the other is indirect through a third party. Your Honor, if the court looks closely at the language of Tamez, the position that Frank Tamez was taking, and I'll quote here from the case, his assertion was, quote, that the statute required that he intend to use the building for a prohibited purpose under Section 856A2, unquote. Our position is not that the manager or the owner under A2 has to personally use his property for an illicit purpose. The point is that under both A1 and A2, the person who has control over the property has to intend that the property be used for that purpose by whichever party. And my second point on the Blockberger analysis is that Congress tells us that. Congress tells us in no uncertain terms that it's seeking to prosecute in 856 not only those people who know that there may be drug activity on their property, but who go further and they seek to further that by making the property available for that purpose. And I'll quote Senator Biden, that they're seeking to prosecute, quote, those who not only know that there is drug use at their event, but also hold the event for the purpose of illegal drug use or distribution. Neither current law nor my bill seeks to punish or promote it for the behavior of their patrons. I'll just end now because I wanted to reserve some time with rebuttal to say that if the Court rejects the Blockberger analysis here, the Court would also be defying the rules of English grammar and really adopting a condescending position to Congress saying that Congress didn't know enough. Congress was illiterate enough not to be able to draft a statute that said ---- But would ---- I saw that argument, but doesn't Congress ---- they don't enact two subsections or two sections to cover the same crime, do they? No, Your Honor, but one is a lesser included offense of the other, and Congress does that frequently. Thank you. You may reserve counsel. Thank you. We'll hear from the government. Kevin Rooney on behalf of the United States. I'd like to address the argument counsel made with regard to the collateral estoppel effect of the district court's ruling. I think we need to step back and look at the statutory language. Section 856A1 prohibits opening or maintaining a place for the purpose of distributing manufacturing, et cetera. Section A2 prohibits renting, leasing, making available. And it's very clear if you look at the excerpt of record that counsel is correct. The district court was concerned very much with that there was a single, only a single transaction. And counsel correctly cited the district court at excerpt of record 96 that there were facts indicating something more than a single transaction involved. The court would have been inclined to deny the Rule 29 motion. The district court judge said that at the time he granted the Rule 29 motion. And the reason there's no collateral estoppel effect now is because the elements of the offenses of A1 and A2 are different. There was no evidence that the defendant opened these premises and immediately started drug transactions. The operative verb, for lack of a better way to phrase it, was maintain. And the district court interpreted the word maintain to mean something more than a single transaction. There was no evidence of more than one transaction, even though there were multiple meetings. In this charge that's now before the court, the A2 charge, there's rent, lease, or make available. There's not the requirement of continuous activity that the district court read into A1. The government's position is that if on a single occasion a defendant rents, leases, or most significantly perhaps makes available his property, he violated the statute. There's not the requirement of continuous activity. Counsel, this is Judge Hawkins. What's the difference between maintain and open? What I perceive to be the difference between maintain and opening is opening is from the inception, from the very beginning, and the defendant had clearly had the property, had owned the property, had operated the property before any of the events about which evidence was introduced. There was illegal events, illegal occurrences. The defendant had owned it, I don't recall exactly, but for a significant period of time, say a year, and then this particular event happened over the course of, I believe, March 19 through 22, 2001. Going, another reason I don't believe there's any collateral estoppel effect on the decision rendered by the district court as to maintaining a place that continuous illegality requirement the district court read into it is that that's a legal determination. Collateral estoppel refers to facts that are necessarily determined. That's simply a legal determination. This is the fact. What's its operation? It's a matter of law. Turning to the remaining arguments before the Court, I think it's very clear that the elements are different. The intent of the case is, as the Court seemed to be indicating, that it is a crime to make, to own, to maintain, to own a premises or lease it, and knowing that somebody else intends to use it for illegal purposes to allow that to go on. In other words, the intent for A2, for the owner or lessor, so to speak, is knowledge and acquiescence. That's all that's required is the knowledge that somebody else is going to do something illegal and permitting that to happen. The intent to distribute, to manufacture, et cetera, is held by the tenant as opposed to the landlord. That's the difference. I think that's what the Chen case says. That's what the Tamez case says. I think that covers most of my remaining arguments. The difference in the elements is very clear. It's who has the intent to distribute, for lack of a better word, to use a shorthand, to distribute. In A1, it's held by the property owner himself. In A2, it's held by the tenant, and the property owner's evil intent is knowing that's going to go on. So just so I understand, to go back to your collateral estoppel argument, your construction of what Jodishi was saying is that he read A1 as requiring more than a single transaction? Correct. And that's very clear when, if you look at the excerpt of record from 92 through 96. So somebody opened the building with the intent of doing and did a single transaction. Let me retreat gracefully there. That wasn't the factual scenario before the court. My interpretation would be there would be an either or. So if someone opened a building with the intent to do it, did a single transaction, and then stops, yes, the statute would be violated. That wasn't before Jodishi. Under defense counsel's argument, to touch on, I believe it goes more to the Blockberger analysis, to touch on that for a minute. Under defense counsel's parsing of 856A2, somebody who absolutely knows their tenant is going to do an illegal drug transaction there, for example, accept an enormous shipment of cocaine and store it there for a while while it's broken down and shipped out. That person doesn't have any intent themselves to engage in the drug transaction. Their only intent is to make money from the tenant who's going to pay them a lot of money to use the warehouse. Under counsel's construction of 856A2, because the person who's leasing that doesn't have the personal intent to distribute the drugs, that person is not liable under 856A2. Why isn't it a lesser-included offense? Because it's simply a different offense. The intent elements are different. It's just the agency, isn't it? I mean, if I manage and control a building and I let a third party do it, I can't get her in. That's the thrust, I think, of Senator Biden. The quote from Senator Biden is basically the idea was you can be the owner yourself, but don't think you're going to sidestep it if you just are the landlord and a tenant does it. You can't hide behind a straw man. Yes, I believe that is. That was the purpose of the legislation. That's the purpose of the legislation, and to address that in a little bit of detail, 856A2 that we're considering in this case is the earlier version. The subsequent amendment, of course, doesn't control, and Senator Biden's language is frankly a little ambiguous, and I addressed that in the supplementary submission of the court. He says at times two different things. He says you're not going to get away with it if you know this is going to go on. On the other hand, he also says we're only after people of that intent. It's something, obviously, the court's going to have to sort out. I don't think it's particularly relevant to this particular case. Counsel, this is Judge Hawkins again. Do I understand the government's position to be that the word distribution in A1 cannot mean a single transaction, but that in A2 it can? No, that's not the government's position. The government believes that Judge Ishii was mistaken in that ruling, but we have to live with that. There seems to be a dispute in different cases in different circuits as to whether Judge Ishii's interpretation was correct or not. The subsequent legislation seemed to address that, but regardless of whether or not Judge Ishii was correct, obviously he dismissed the A1 charge and the government has to live with that. Can I ask one more question that deals with relationships between U.S. attorneys and the Department of Justice? Certainly. Was the bringing of the fourth superseding indictment done with the permission of Maine Justice or the criminal division? No. Is that required? No, there's no requirement of an approval there. Obviously, I think the Court's familiar from the record. The fourth indictment was simply a technical correction of the indictment that had been returned a couple weeks before. I guess that's one way to look at it. Right. I think the next, the bigger question is the third superseding, was there any requirement of Maine Justice approval on that? No. None is required. None was sought. I see my time's expired. There's one quick point I'd like to make, if the Court will. Very quick, please. Counsel had argued initially in her opening brief that the starting point is to explore whether or not Congress intended multiple punishments for the 856-A1 offense and the 856-A2 offense. As I pointed out in my brief, the Etsiti case says no. The Blockberger case is the starting point for double jeopardy analysis, and only if the case, the statutes are not distinguishable under Blockberger do you go down to that other resolution. I think I understand your argument, counsel. Thank you. Ms. Shaheen, you have some reserve time. I'll try to speak very quickly. I just want to cover a couple of brief points. The government's position that the district court made its ruling on more than one transaction being required based on the word maintain in 856-A1 is interesting, but not supported anywhere in the record. The record reflects, including the language that I read to the Court, that what the Court was focusing on was the purpose element, the purpose for distribution, not the maintain portion of that statute. Second, in response to the Court's earlier concern on Temez, I would just like to point out at the time the Ninth Circuit decided Temez, it did not have the benefit of the legislative history, which is, although subsequent, consistent with. No, I understand that. But, you know, we as a panel can't fault or we can't overrule or object to it. I understand that. And I don't think that this double jeopardy issue causes the Court to have to overrule Temez. I'll quote the most relevant language, I think, from Temez, is the Court's statement in that case that, quote, A2 was intended to prohibit an owner from providing a place for illegal conduct. That's exactly what our argument is here. I think the only problem we get into with Temez is its exclusive reliance on Chen. And I'd ask the Court, what do you do with the language in Chen that says, there are at least 16 federal criminal statutes that combine knowingly and for the purpose of. A review of these shows that the purpose requirement clearly goes to the actor in the statute, the one who has the knowledge. What the government wants the Court to do is read out of the statute in A2 the words knowingly and intentionally. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision. Very well argued. Yeah. And I agree. Thank you. The Court will recess. All rise. Success in the jury. Judge Hawkins. Okay. Thank you.
judges: O'Scannlain Hawkins, Fisher